JAMES E. DOROSHOW (SBN 112920)
JDoroshow@FoxRothschild.com
**FOX ROTHSCHILD LLP**
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:  (310) 598-4150
Facsimile:   (310) 556-9828

LAUREN SABOL (PRO HAC VICE)
LSabol@FoxRothschild.com
**FOX ROTHSCHILD LLP**
BNY Mellon Center
500 Grant Street
Pittsburgh, PA 15219
Telephone: (412) 394-5568
Facsimile: (412) 391-6984

Attorneys for Defendant
THE GLASS DOOR COMPANY, INC.
d/b/a DOORS22

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| THE SLIDING DOOR COMPANY, a California Corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>THE GLASS DOOR COMPANY, INC. d/b/a DOORS22, a Florida Corporation<br><br>                    Defendant. | Case No. 2:22-cv-07500-MCS-MAA<br><br>**DEFENDANT DOORS22'S ~~AMENDED~~ OPPOSITION TO PLAINTIFF THE SLIDING DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge:        The Hon. Mark C. Scarsi<br>Courtroom:   7C<br>Date:         June 26, 2023<br>Time:        9:00 a.m. |

~~DEFENDANT DOORS22'S OPPOSITION TO PLAINTIFF THE SLIDING DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION~~
DEFENDANT DOORS22'S AMENDED OPPOSITION TO PLAINTIFF THE SLIDING DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................... 1

II. PROCEDURAL BACKGROUND ............................................................ 3

    A. The 2020 Action ................................................................................. 3

    B. The Current Lawsuit .......................................................................... 5

        1. Plaintiff Delayed Two Years Before Filing This Lawsuit. ......... 5

        2. Plaintiff Delayed Seven Months After Filing This Action To Seek Injunctive Relief. ............................................................... 5

        3. Plaintiff Delayed Six Months Before Filing A Patent Claim. ....6

        4. Plaintiff Never Disclosed Its Intent To Seek A Preliminary Injunction. ................................................................................... 6

        5. Plaintiff Never Disclosed The Identity Of Its Declarants. .......... 7

        6. Plaintiff Failed To Comply With Its Discovery Obligations. ..... 7

III. ARGUMENT .......................................................................................... 9

    A. Governing Legal Standard .................................................................. 9

    B. Plaintiff Fails To Show Irreparable Harm. ......................................... 9

        1. Irreparable Harm Is Required And Not Presumed. ..................... 9

        2. Plaintiff's Delay Defeats Its Claim Of Irreparable Harm. ........ 10

    C. Plaintiff's Conduct Here Prejudiced Doors22's Ability To Oppose The PI Motion. ................................................................................. 12

    D. Plaintiff Is Not Likely To Prevail On The Merits. ............................ 13

        1. Plaintiff's Trade Dress Claim Based On A Common, Functional Door Design Lacks Merit. ....................................... 13

            i. The PI Motion Is Not Even Based On Plaintiff's Asserted Trade Dress. ............................................................. 14

            ii. Plaintiff's Door Design Is Functional. ................................ 14

            iii. Plaintiff Provides No Evidence Of Secondary Meaning. ............................................................................. 17

            iv. There Is No Evidence Of Confusion. ................................... 18

            v. Plaintiff's Door Design Is Common In The Industry. ..... 19

i

2.   Plaintiff's Patent Claim Lacks Merit. ...............................20

    i.   Doors22's Intervening Rights Bar Plaintiff's Patent Claim. ...............................20

    ii.   The '729 Patent Covers A Narrow Latch Configuration. ...............................21

    iii.   Defendant's Prior Art Design Does Not Infringe. ...........22

    iv.   The '729 Patent Is Invalid. ...............................23

E.   The Balance Of Hardships And Public Interest Weigh In Doors22's Favor. ...............................24

F.   Plaintiff's Requested Relief Is Overbroad ...............................25

IV.   CONCLUSION ...............................26

I.   INTRODUCTION ...............................1

II.   PROCEDURAL BACKGROUND ...............................3

A.   The 2020 Action ...............................3

B.   The Current Lawsuit ...............................5

    1.   Plaintiff Delayed Two Years Before Filing This Lawsuit. ...............................5

    2.   Plaintiff Delayed Seven Months After Filing This Action To Seek Injunctive Relief. ...............................5

    3.   Plaintiff Delayed Six Months Before Filing A Patent Claim. ....6

    4.   Plaintiff Never Disclosed Its Intent To Seek A Preliminary Injunction. ...............................6

    5.   Plaintiff Never Disclosed The Identity Of Its Declarants. ...........7

    6.   Plaintiff Failed To Comply With Its Discovery Obligations. ......7

III.   ARGUMENT ...............................9

A.   Governing Legal Standard ...............................9

B.   Plaintiff Fails To Show Irreparable Harm. ...............................9

    1.   Irreparable Harm Is Required And Not Presumed. ..................9

    2.   Plaintiff's Delay Defeats Its Claim Of Irreparable Harm. .........10

C.   Plaintiff's Conduct Here Prejudiced Doors22's Ability To Oppose The PI Motion. ...............................12

ii

D.    Plaintiff Is Not Likely To Prevail On The Merits. ...........................13

    1.    Plaintiff's Trade Dress Claim Based On A Common, Functional Door Design Lacks Merit. ...................................13

        i.    The PI Motion Is Not Even Based On Plaintiff's Asserted Trade Dress. ...................................14

        ii.    Plaintiff's Door Design Is Functional...........................14

        iii.    Plaintiff Provides No Evidence Of Secondary Meaning. ...................................17

        iv.    There Is No Evidence Of Confusion. ..........................18

        v.    Plaintiff's Door Design Is Common In The Industry.....19

    2.    Plaintiff's Patent Claim Lacks Merit. ...........................20

        i.    Doors22's Intervening Rights Bar Plaintiff's Patent Claim...................................20

        ii.    The '729 Patent Covers A Narrow Latch Configuration. ...................................21

        iii.    Defendant's Prior Art Design Does Not Infringe..........22

        iv.    The '729 Patent Is Invalid. ...................................23

E.    The Balance Of Hardships And Public Interest Weigh In Doors22's Favor...................................24

F.    Plaintiff's Requested Relief Is Overbroad ...........................25

IV.    CONCLUSION...................................26

iii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adidas Am., Inc. v. Sketchers USA, Inc.,*
  890 F.3d 747 (9th Cir. 2018) ............................................................... 13

*Alliance for the Wild Rockies v. Cottrell,*
  632 F.3d 1127 (9th Cir. 2011) ............................................................ 10

*Aurora World, Inc. v. Ty Inc.,*
  719 F. Supp. 2d 1115 (C.D. Cal. 2009) ............................................. 16

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.,*
  457 F.3d 1062 (9th Cir. 2006) ............................................................ 15

*Bayer AG v. Elan Pharm. Research Corp.,*
  212 F.3d 1241 (Fed. Cir. 2000) .......................................................... 21

*Boardman v. Pac. Seafood Grp.,*
  822 F.3d 1011 (9th Cir. 2016) ............................................................ 10

*Carter-Wallace, Inc. v. Procter & Gamble Co.,*
  434 F.2d 794 (9th Cir. 1970) .............................................................. 19

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
  251 F.3d 1252 (9th Cir. 2001) ............................................................ 13

*Dahl v. Swift Distribs., Inc.,*
  757 F. Supp. 2d 976 (C.D. Cal. 2010) ......................................... 21, 22

*eBay Inc. v. MercExchange, LLC,*
  547 U.S. 388 (2006)............................................................................. 9

*Entrepreneur Media, Inc. v. Smith,*
  279 F.3d 1135 (9th Cir. 2002) ............................................................ 19

*Falcon Stainless, Inc. v. Rino Cos., Inc.,*
  No. CV 08-00926 AHS (MLGx),
  2011 WL 13130703 (C.D. Cal. Oct. 21, 2011) ................................. 16

*First Brands Corp. v. Fred Meyer, Inc.,*
  809 F.2d 1378 (9th Cir. 1987) ...................................................... 16, 17

*In re Excel Innovations, Inc.,*
  502 F.3d 1086 (9th Cir. 2007) .............................................................. 9

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.,*
  4 F.3d 819 (9th Cir. 1993) .................................................................. 23

*League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton,*
  752 F.3d 755 (9th Cir. 2014) .......................................................... 9, 24

iv

*Los Angeles Mem. Coliseum Comm'n v. Nat'l Football League,*
  634 F.2d 1197 (9th Cir. 1980) ...............................................................11

*Luminara Worldwide, LLC v. Liown Elecs. Co.,*
  814 F.3d 1343 (Fed. Cir. 2016) .............................................................21

*Mazurek v. Armstrong,*
  520 U.S. 968 (1997).................................................................................9

*Metro-Media See Metro-Media Broadcasting Corp. v. MGM/VA Entertainment Co.,*
  611 F. Supp. 415 (C.D. Cal. 1985) ........................................................10

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.,*
  762 F.2d 1374 (9th Cir. 1985) .................................................................9

*Playboy Enters. v. Netscape Commc'ns. Corp.,*
  55 F. Supp. 2d 1070 (C.D. Cal. 1999) .............................................10, 18

*Principal Lighting Grp., LLC v. Sloan Co., Inc.,*
  No. CV 18-6449-GW(KSx), 2018 WL 6499354 (C.D. Cal. Sept. 10, 2018) ....11

*Protech Diamond Tools, Inc. v. Liao,*
  No. C 08-3684 SBA, 2009 WL 1626587 (N.D. Cal. June 8, 2009)...................10

*Roe 1 v. State Bar of California,*
  No. SA CV 22-00983-DFM, 2022 WL 4613394 (C.D. Cal. Sept. 7, 2022) ......10

*Sardi's Rest. Corp. v. Sardie,*
  755 F.2d 719 (9th Cir. 1985) ...................................................................9

*Scentsy, Inc. v. Performance Mfg. Inc.,*
  No. CV08-553-S-EJL, 2009 WL 10713060 (D. Idaho Apr. 3, 2009)..........16, 23

*The Sliding Door Company v. Leon Bell et al.,*
  Case No. 1:20-cv-22951-BB (S.D. Fla.)..............................................1, 3

*Titan Tire Corp. v. Case New Holland, Inc.,*
  566 F.3d 1372 (Fed. Cir. 2009) .............................................................19

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.,*
  532 U.S. 23 (2001)................................................................................14

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,*
  520 U.S. 17 (1997)................................................................................21

*Winter v. Natural Res. Def. Council, Inc.,*
  555 U.S. 7 (2008)..............................................................9, 10, ~~22~~23

**Statutes**

35 U.S.C. § 103 .....................................................................................19, 22

35 U.S.C. § 41(c)(2).......................................................................................20

**Other Authorities**

1 McCarthy on Trademarks and Unfair Competition,
  § 7:64 (5th ed.) ..........................................................................14, 24

37 C.F.R. § 1.362 ...............................................................................19

**Rules**

Fed. R. Civ. P. 26 ..............................................................................6, 12

Fed. R. Civ. P. 33(d) ...............................................................................7

Fed. R. Civ. P. 65(d) .............................................................................24

vi

## I.     **INTRODUCTION**

Plaintiff The Sliding Door Company's ("Plaintiff" or "Sliding Door") Motion for Preliminary Injunction ("PI Motion") must be denied because it fails to prove either irreparable injury or a likelihood of success on the merits.

Sliding Door's ***three-year delay*** before filing its PI Motion cuts clearly against a finding of irreparable harm. Sliding Door has confirmed it knew of Defendant The Glass Doors Company, Inc. d/b/a Doors22 ("Defendant" or "Doors22") and its product design many years prior to filing this suit. In fact, Sliding Door sued Doors22 in ***July 2020*** (***over two years*** prior to filing this action), filing a complaint filled with allegations about how Doors22 and its products allegedly violated Sliding Doors' intellectual property rights ("the 2020 Action").  Prior to doing so, Sliding Door sent Doors22 a letter stating that it had "recently learned that Doors 22 has recently began offering for sale ***similar types of products*** to TSDC including, without limitation various room partitions and dividers, doors, frames, etc." (Ex. E (emphasis added)).[1] Thus, it is indisputable that not only did Sliding Doors know of Doors22 and its products since at least as early as 2020, it also slept on its rights by waiting two years before filing known claims for trade dress and patent infringement. The 2020 Action was settled and dismissed in November 2020. *The Sliding Door Co. v. Bell et al.*, No. 1:20-cv-22951 (S.D. Fla.), Dkts. 27-31.

Sliding Door then waited ***two years*** before filing this lawsuit in October 2022.  For the first time, Sliding Door has now included a trade dress infringement claim in its Complaint, Dkt. 1. While announcing its intent to amend its Complaint to add a patent claim shortly after filing suit, Sliding Door thereafter waited ***six months*** to add a patent claim. It then waited until May 12, 2023, ***seven months*** after filing this action, to file the PI Motion this Court is now being asked to consider for the first time.

Sliding Door's unexplained ***two-year*** delay prior to asserting trade dress and patent

---

[1] Exhibits A-F are attached to the Declaration of David Lustig ("Lustig Decl."). Exhibits 1-18 are attached to the Declaration of James Doroshow ("Doroshow Decl."). Both Declarations are filed concurrently herewith.

1

~~DEFENDANT DOORS22'S OPPOSITION TO PLAINTIFF THE SLIDING DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION~~
DEFENDANT DOORS22'S AMENDED OPPOSITION TO PLAINTIFF THE SLIDING DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION

1    infringement claims, and its ***seven-month*** delay in filing its PI Motion in this action,

2    clearly undercut Sliding Door's new claim it will suffer irreparable injury if the Court

3    does not enter a preliminary injunction at this time before trial.

4          Sliding Door's PI Motion also fails on the merits for lack of evidence. Although

5    Sliding Door has had no less than ***three years*** to obtain survey evidence to try to prove

6    secondary meaning and a likelihood of confusion, it offers none. Instead, Sliding Door

7    now appears before this Court trying to convince it that secondary meaning and other

8    necessary elements of trade dress and patent infringement can be established simply from

9    conclusory statements from a Sliding Door administrator who merely states that

10   "…[Sliding Door's] Trade Dress enjoys wide acceptance and association with Sliding

11   Door within the industry, and has come to be widely and favorably recognized by those

12   in the industry as an indicator of the origin of Sliding Door's goods." (Dkt. 53-3, Hai-

13   Ami Decl. at ¶19; *see also id*. at ¶20 ("The purchasing public, architects, developers, and

14   general contractors have all come to associate the Trade Dress with Sliding Door. This

15   distinctive and non-functional Trade Dress has achieved significant secondary

16   meaning")). Merely parroting the elements of Plaintiff's claims will not of course satisfy

17   the requirements of presenting actual evidence to prove them.

18         There is also no evidence of actual or potential confusion. Instead, Sliding Door

19   relies on Declarations from three previously undisclosed Sliding Door business associates

20   (interior designers and an installer) who opine that they believe the Doors22 product is

21   "confusingly similar" to those offered by Sliding Door.  In doing so, however, neither

22   Sliding Door nor any of its business associates ever address whether there has been

23   any actual confusion in the marketplace. There is no proof of even one instance of

24   confusion. Nowhere in its PI Motion does Plaintiff identify anyone who might have been

25   confused or what that confusion might have consisted of. (*See* Dkt. 53-4, Leventhal Decl.

26   at ¶6; Dkt. 53-5, Citizen Decl. at ¶5; Dkt. 53-6 Tendler Decl. at ¶9). Obviously, the

27   subjective opinions of Sliding Door's business associates are no substitute for offering

28
                                          2
~~DEFENDANT DOORS22'S OPPOSITION TO PLAINTIFF THE SLIDING DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION~~ DEFENDANT
DOORS22'S AMENDED OPPOSITION TO PLAINTIFF THE SLIDING DOORS
COMPANY'S MOTION FOR PRELIMINARY INJUNCTION

1  competent evidence of actual or potential consumer confusion.

2    As shown below, Plaintiff's PI Motion fails and should therefore be denied.

3  **II.    PROCEDURAL BACKGROUND**

4    **A.    The 2020 Action**

5    Plaintiff's delay both before and after filing this action cuts against finding

6  irreparable harm.  Doors22 has been advertising and selling its sliding glass door

7  products since approximately October 2019.  ~~Since that time, the~~ The features of

8  Defendant's product ~~have never changed.~~ were the same until 2022.  (Lustig Decl. ¶4~~.~~

9  (further distinguishing hook modification made)).

10    In July 2020, over two years before filing this lawsuit in October 2022, Sliding

11  Door filed the 2020 Action in the United States District Court for the Southern District of

12  Florida entitled *The Sliding Door Company v. Leon Bell et al.*, Case No. 1:20-cv-22951-

13  BB.  (Ex. F). This Action involved the use of photographs by Doors22 of Sliding Door's

14  products and installations. In the 2020 Action Complaint, Plaintiff made claims against

15  Doors22 and its two owners (Bell and Lustig) seeking damages and ***injunctive relief***

16  under federal and state law for alleged unfair competition, deceptive and unfair trade

17  practices and common law infringement. *Id.* at 19-32. No claims of trade dress or patent

18  infringement were asserted in the 2020 Action—although they certainly could have been.

19    It is indisputable that Sliding Door knew of Doors22's products at least as early as

20  2020.  On June 5, 2020, prior to filing its 2020 Complaint, Sliding Door's counsel sent

21  Doors22 a letter stating, among others, that Sliding Door "has recently learned that Doors

22  22 has recently began offering for sale ***similar types of products*** to TSDC including,

23  without limitation various room partitions and dividers, doors, frames, etc." (Ex. E

24  (emphasis added)).  Plaintiff also alleged in the 2020 Action that "within just the past

25  year Defendants have become engaged in the business of distributing, marketing and

26  selling interior doors and related products in competition with SLIDING DOOR." (Ex. F

27  at ¶14). As such, it cannot be reasonably questioned that Sliding Door had the knowledge

28

3

~~DEFENDANT DOORS22'S OPPOSITION TO PLAINTIFF THE SLIDING DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION~~ DEFENDANT DOORS22'S AMENDED OPPOSITION TO PLAINTIFF THE SLIDING DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION

1 | and ability in 2020 to include trade dress and patent claims, and to seek injunctive relief

2 | against Doors22, in the 2020 Action.

3 |      In fact, the 2020 Action Complaint mirrors many of the same allegations that now

4 | appear in the current lawsuit. For example, in the 2020 Complaint Sliding Door alleged:

5 | • it has a "patented wheel-to-track locking mechanism" (Ex. F at ¶17;

6 |    *compare* Dkt. 40 ¶¶22-23);

7 | • it "achieved extensive exposure and widespread recognition" of its products

8 |    and brand and is an "industry trendsetter" (Ex. F at ¶¶19-20; *compare* Dkt.

9 |    40 ¶¶13-14);

10 | • it had "consistently and continuously marketed, advertised, displayed, and

11 |    sold" its products (including over the internet, at U.S. trade shows and

12 |    industry events, and at its showrooms) (Ex. F at ¶¶21-23, 25, 27; *compare*

13 |    Dkt. 40 ¶¶12, 16-17);

14 | • no one else "lawfully markets or sells the same specifically designed"

15 |    products (Ex. F at ¶24; *compare* Dkt. 40 ¶19);

16 | • Sliding Door's brand and reputation had "acquired great value and goodwill,

17 |    and its brands serve as ***source identifiers*** . . . and to serve to identify and

18 |    distinguish the ***SLIDING DOOR PRODUCTS and services from those of***

19 |    ***others***" (Ex. F at ¶26; *compare* Dkt. 40 ¶¶20-21) (emphasis added);

20 | • "SLIDING DOOR's reputation and goodwill is an extremely important asset

21 |    of SLIDING DOOR and hav[e] enormous value as ***a symbol*** of SLIDING

22 |    DOOR's quality products and services" (Ex. F at ¶26; *compare* Dkt. 40

23 |    ¶¶20-21) (emphasis added);

24 | • Sliding Door has spent millions of dollars advertising and promoting its

25 |    brand and products (Ex. F at ¶22; *compare* Dkt. 40 ¶16);

26 | • Sliding Door's products have received accolades and widespread media

27 |    attention (Ex. F at ¶19; *compare* Dkt. 40 ¶¶16-17);

28 |

4

~~DEFENDANT DOORS22'S OPPOSITION TO PLAINTIFF THE SLIDING~~
~~DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION~~ DEFENDANT
DOORS22'S AMENDED OPPOSITION TO PLAINTIFF THE SLIDING DOORS
COMPANY'S MOTION FOR PRELIMINARY INJUNCTION

- Sliding Door's products are ***distinctive*** (Ex. F at ¶33; *compare* Dkt. 40 ¶¶21, 32, 45);
- the quality of Sliding Door's products "have come to symbolize the goodwill of the SLIDING DOOR PRODUCTS throughout the U.S. and elsewhere" (Ex. F at ¶34; *compare* Dkt. 40 ¶21);
- Doors22 and its owners were attempting to cause ***confusion as to the source and origin*** of Door22's and Sliding Door's products (Ex. F at ¶¶52-53, 59, 62; *compare* Dkt. 40 ¶¶31, 47, 49-50, 62-63); and
- Sliding Door had suffered ***irreparable harm*** supporting injunctive relief (Ex. F at ¶66; *compare* Dkt. 40 ¶¶36, 40, 51, 58, 62, 66, 71, 86).

In fact, several allegations in the 2020 Action Complaint are identical to allegations now found in this lawsuit. *E.g.*, *compare* Ex. F at ¶40 (Sliding Door salesperson claiming she had lost a project to Doors22 because a customer told her "I get the exact same product but cheaper"), *with* Dkt. 40 at ¶30 (same). Thus, Sliding Door clearly knew it had (and in fact had alleged) grounds for asserting both trade dress and patent claims as early as 2020.

**B.    The Current Lawsuit**

**1.    Plaintiff Delayed Two Years Before Filing This Lawsuit.**

Although Sliding Door unquestionably had the requisite knowledge and ability to assert trade dress and patent infringement in 2020, it delayed nearly ***two years*** to do so and now appears before this Court seeking preliminary injunctive relief for the first time.  Plaintiff's two-year filing delay, and renewed sense of "urgency," is belied, however, by the manner in which it has litigated this action since its October 2022 filing.

**2.  Plaintiff Delayed Seven Months After Filing This Action To Seek Injunctive Relief.**

First, Plaintiff waited ***seven months*** after filing this lawsuit before even seeking a preliminary injunction. (Dkt. 1; Dkt. 53). This too justifies denial of the PI Motion. As

5

1   discussed further below, delays of even a few months are regularly held sufficient to
2   preclude any claim of irreparable injury.  (*Infra* Argument (B)(2)). In this case, however,
3   Plaintiff's *seven-month* delay tells only half the story.

4              **3.  Plaintiff Delayed Six Months Before Filing A Patent Claim.**

5          After filing this lawsuit in October 2022, the case remained largely dormant for
6   months.  While Sliding Door and its first set of attorneys announced in January 2023 that
7   they intended to file an amended complaint to add a patent claim, this was not even done
8   until *April 2023 (three months later)—six months after this lawsuit had been filed*.
9   (Dkt. 21 at 3, 6; Dkt. 40).  In her Declaration opposing Doors22's requested extension,
10  Sliding Door's Administrative Officer, Sheryl Hai-Ami, confirms that Sliding Door
11  believed it had a patent infringement claim prior to filing this lawsuit, yet inexplicably
12  failed to include it in its original complaint.  (Dkt. 55-1 at ¶6; Dkt. 1). Thus, accepting
13  Ms. Hai-Ami's version of the facts, Sliding Door delayed at least *seven months* before
14  filing a *known* patent claim in this action.

15         The Court was originally advised of Plaintiff's intention of filing an amended
16  complaint which would include a patent claim in the Parties' February 2023 Rule 26(f)
17  Report. (Dkt. 21 at 3). In this Report, Doors22 advised the Court that Defendant wanted
18  to review the proposed amendment before it was filed.  (*Id.* at 3). Plaintiff however never
19  even bothered to send Doors22's counsel a proposed amendment until months later. (*See*
20  Doroshow Decl. at ¶¶3-5).

21             **4.  Plaintiff Never Disclosed Its Intent To Seek A Preliminary**
22                 **Injunction.**

23         While Court rules also required the Parties to list all motions they intended to file
24  in their Rule 26(f) Report, Sliding Door never notified the Court or Doors22 that it had
25  any intention of filing a preliminary injunction motion. (*See* Dkt. 21 at 3). The first time
26  that Doors22 learned of it was on May 12, 2023 when the Motion was actually filed with
27  this Court—*seven months* after this action was filed.
28

                                              6

**5. Plaintiff Never Disclosed The Identity Of Its Declarants.**

While Plaintiff was also required to list witnesses it believed had knowledge which might be used to support Sliding Door's claims under Fed. R. Civ. P. 26, the only witnesses that Sliding Door identified in its Initial Disclosures were Doron Polus (Sliding Door's owner) and Leon Bell and David Lustig (Doors22's two owners).  (Ex. 9). There was no mention whatsoever in Plaintiff's Initial Disclosures of any of the individuals who have now submitted Declarations in support of Plaintiff's PI Motion.  As such, not only did Doors22 never have advance notice that Plaintiff might file a preliminary injunction motion, it also had no notice that any of the four declarants who have now filed Declarations in support of Plaintiff's PI Motion would be witnesses used by Plaintiff in this action. (*Id.*).

**6. Plaintiff Failed To Comply With Its Discovery Obligations.**

Unfortunately, the procedural history of this litigation gets worse. While Plaintiff and its first set of attorneys did nothing to prosecute this action for virtually ***five months***, Doors22 immediately began its defense. In February 2023, Doors22 served Sliding Door with an initial set of Interrogatories and Document Requests to obtain information and records relating to Plaintiff's then existing trade dress claim. (Doroshow Decl. at ¶7). Sliding Door's responses to this discovery were due in March 2023. However, as discovery deadlines approached, Sliding Door announced that it would be substituting counsel. (*Id.* at ¶6). Shortly after being retained, Plaintiff's second set of attorneys asked Doors22's counsel for a 30-day extension to respond to outstanding discovery. (*Id.* at ¶8). In doing so, Plaintiff's new lawyers never advised defense counsel that Plaintiff might be filing a preliminary injunction motion, or that there might be any reason not to keep existing deadlines intact. As such, Doors22's counsel agreed to the 30-day extension as a courtesy to Plaintiff's new attorneys. (*Id.* at ¶9).

Despite giving Sliding Doors and its new attorneys an additional 30-days to respond to Doors22's discovery, the responses that Plaintiff finally served in April 2023

were nonresponsive, evasive and incomplete. (*Id.* at ¶10).  For example, in its Responses to Doors22's Interrogatories, Sliding Door repeatedly invoked Fed. R. Civ. P. 33(d) stating that, in lieu of providing a complete narrative, records would be produced that would provide the information Defendant requested.  Yet, Plaintiff did not identify any records in response to Doors22's Interrogatories as Rule 33(d) requires. (*Id.* at ¶¶13-14).

Because of this and other deficiencies in Plaintiff's responses, Doors22's counsel immediately initiated the meet and confer process.  (Doroshow Decl. at ¶15).  After sending Plaintiff's counsel a lengthy 5-page letter setting out the numerous deficiencies in Plaintiff's discovery responses, counsel then conferred by telephone.  At the conclusion of this call, Sliding Door's counsel agreed to supplement Plaintiff's Interrogatory responses within an additional 30-days, including, among others, to identify Plaintiff's witnesses and other information that might otherwise now be used to oppose Plaintiff's PI Motion, had Sliding Door ever disclosed its intention to seek preliminary injunctive relief.  (*Id.* at ¶16).  Despite this agreement, Sliding Door well delayed beyond the 30-days counsel agreed to before identifying any records from which requested information might be obtained.  Even on the eve of Doors22's filing deadline to oppose Plaintiff's PI Motion, Sliding Door has continued hiding the ball as long as possible. As Doors22 was in the final steps of competing this Opposition, on 4:32 p.m. on Friday, June 2, 2023, *one business day* before this Opposition was due, Sliding Doors served Doors22 with 53-pages of Supplemental Interrogatory Responses. (Ex. 6).

On May 12, 2023, *seven months* after this lawsuit was filed, without any prior notice that a preliminary injunction motion would be filed or any notice of the identity of any witness who might support it, Sliding Door filed its PI Motion giving Doors22 and its counsel *one week* to oppose it. Making matters worse, as outlined more fully in the accompanying Doroshow Declaration, having ignored its discovery obligations for months, Sliding Door now includes its alleged facts and relies upon records never disclosed to Doors22 in responding to Defendant's discovery. (Doroshow Decl. at ¶¶17-

8

23).

The procedural record before this Court alone shows at least two reasons why Sliding Door's Motion should be denied.  First, Plaintiff's **three-year delay** in filing a preliminary injunction motion when it had the requisite knowledge and opportunity to do so at least as early as 2020, obviously cuts against a finding of irreparable harm. Second, Sliding Door's failure to comply with mandated disclosure requirements and Plaintiff's discovery obligations should not be countenanced by this Court. Even to this day, Plaintiff is still engaging in a rolling document production without telling defense counsel when it will be concluded. (*Id.* at ¶22).

III.   **ARGUMENT**

A.     **Governing Legal Standard**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). It "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original; citation omitted). A plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of the preliminary relief, [3] that the balance of equities tips in his favor, *and* [4] that the injunction is in the public interest." *Winter*, 555 U.S. at 20 (emphasis added). Plaintiff fails to demonstrate it can prove any one (much less all) of the *Winter* factors.

B.     **Plaintiff Fails To Show Irreparable Harm.**

1.   **Irreparable Harm Is Required And Not Presumed.**

Plaintiff may not obtain preliminary relief without establishing that it is "likely to suffer irreparable harm in the absence of preliminary relief." *Id*. In addition, Plaintiff must show "remedies available at law, such as monetary damages, are inadequate to compensate for [their] injury." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Unsupported statements premised on reputational injury or speculation cannot

9

1   establish irreparable harm.  *See Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 725 (9th Cir.

2   1985); *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007). Moreover, a

3   plaintiff seeking a preliminary injunction must show that the proposed injunction would

4   remedy the harm alleged. *League of Wilderness Defenders/Blue Mountains Biodiversity*

5   *Project v. Connaughton*, 752 F.3d 755, 767 (9th Cir. 2014) (citation omitted).

6   **2. Plaintiff's Delay Defeats Its Claim Of Irreparable Harm.**

7   Plaintiff's exceptionally long delay is fatal to its assertion of irreparable harm.  A

8   "long delay before seeking preliminary injunction implies a lack of urgency and

9   irreparable harm."  *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377

10  (9th Cir. 1985); *see also Protech Diamond Tools, Inc. v. Liao*, No. C 08-3684 SBA, 2009

11  WL 1626587, at *6 (N.D. Cal. June 8, 2009) ("[D]elay alone is sufficient to undermine

12  Plaintiff's claim of immediate, irreparable harm."). Delays of even a few months are

13  regularly held sufficient to preclude any claim of irreparable injury. *See, e.g., Roe 1 v.*

14  *State Bar of California*, No. SA CV 22-00983-DFM, 2022 WL 4613394, at *3 (C.D. Cal.

15  Sept. 7, 2022) (**five-month** delay); *Playboy Enters. v. Netscape Commc'ns. Corp.*, 55 F.

16  Supp. 2d 1070, 1080, 1090 (C.D. Cal. 1999) *aff'd*, 202 F.3d 278 (9th Cir. 1999) (**five-**

17  **month** delay); *Metro-Media See Metro-Media Broadcasting Corp. v. MGM/VA*

18  *Entertainment Co.*, 611 F. Supp. 415, 427 (C.D. Cal. 1985) (**four-month** delay).

19  Here, Plaintiff waited nearly ***three years*** after knowing of Doors22's product

20  design and ***seven months*** after the filing of the Complaint in this action to move for

21  preliminary injunctive relief. The ~~accused~~ Doors22 product design ~~that is accused of~~

22  ~~infringement in this case has never changed since Doors22 first began selling it in~~was the

23  ~~same from~~ 2019 ~~2022, with a further distinguishing change to the latch angle in 2022~~.

24  Sliding Door has never offered any explanation why it delayed filing trade dress and

25  patent claims until ***two years*** after it knew of Defendant's product design starting at least

26  since 2020. Such protracted delay clearly demonstrates there is a lack of any irreparable

27  harm.

28

1         Further, "immediate threatened injury [is] a prerequisite to preliminary injunctive

2   relief." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016).  That is,

3   irreparable harm must be "*likely*." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

4   1127, 1131 (9th Cir. 2011) (emphasis in original).  Claims of possible or speculative

5   injury are insufficient. *Id.*; *Boardman*, 822 F.3d at 1022; *Winter*, 555 U.S. at 22.  In this

6   case, Plaintiff relies solely on a Declaration from its Administration Officer, Sheryl Hai-

7   Ami, to argue that it is allegedly now being irreparably harmed by Doors22's alleged

8   infringement. (Dkt. 53-1 at 22-23; Dkt. 53-3).  At most, however, Hai-Ami ***speculates***

9   that Plaintiff has lost only one sale to Doors22 and "may" have lost others, without tying

10   the loss to the infringement of any specific alleged trade dress or patented feature. (Dkt.

11   53-3 at ¶¶25-29, 35-37). Such speculative allegations are clearly insufficient to establish

12   immediate threatened injury.[2]  No declaration or any other form of competent evidence

13   has been provided by any of the alleged customers Plaintiff claims were lost (*e.g.*,

14   Serendipity Labs, Venture X, URG-HQ). Nor does Hai-Ami address (i) the many other

15   possible reasons why a customer may have chosen Doors22's product over Plaintiff's,

16   such as Doors22's smart lock offering or (ii) if these customers purchased Doors22

17   products that are outside the scope of Plaintiff's alleged patent and trade dress (*e.g.*,

18   stationary partition, non-clear glass doors). (Lustig Decl. ¶¶12-14).

19         While Hai-Ami's Declaration only offers conclusory allegations about alleged

20   irreparable harm, she in fact conclusively establishes that any potential injury to Plaintiff

21   is only pecuniary. Significantly, Hai-Ami has even been able to detail the exact dollar

22   amount, down to the cent, that Plaintiff allegedly lost due to Doors22's alleged

23   infringement. (Dkt. 53-3 at ¶¶35-36). When pecuniary damages are adequate to

24   compensate an alleged injury, there is no irreparable harm and injunctive relief is

25   inappropriate. *See, e.g.*, *Los Angeles Mem. Coliseum Comm'n v. Nat'l Football League,*

26   _____
[2] Inadmissible evidence is given less weight. *See Principal Lighting Grp., LLC v. Sloan
27   Co., Inc.*, No. CV 18-6449-GW(KSx), 2018 WL 6499354, at *4 (C.D. Cal. Sept. 10,
2018).

28

11

<span style="color:red">~~DEFENDANT DOORS22'S OPPOSITION TO PLAINTIFF THE SLIDING
DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION~~</span> <span style="color:red">DEFENDANT
DOORS22'S AMENDED OPPOSITION TO PLAINTIFF THE SLIDING DOORS
COMPANY'S MOTION FOR PRELIMINARY INJUNCTION</span>

634 F.2d 1197, 1202, 1204 (9th Cir. 1980) (vacating injunction because lost revenues would be compensable by a damage award).

Plaintiff's irreparable harm claim relating to U.S. Patent No. 7,647,729 ("the '729 Patent") is also particularly weak because it failed to timely pay maintenance fees to keep its patent in full force. Due to Plaintiff's failures, the '729 Patent sat ***expired for nearly three years***. (*Infra* Argument (D)(2)(i)). If potential infringement could have possibly caused Plaintiff irreparable harm, one would of course have expected Plaintiff to timely pay maintenance fees to ensure that it could enforce the '729 Patent for its entire duration. Furthermore, Doors22's equitable defenses of waiver, estoppel, acquiescence, unclean hands, and laches based on Plaintiff's delay bar Plaintiff's claims. (*See* Dkt. 51).

## C. Plaintiff's Conduct Here Prejudiced Doors22's Ability To Oppose The PI Motion.

Plaintiff's delay in prosecution of this lawsuit cuts also against finding irreparable harm in this case. After filing this lawsuit, Plaintiff waited an additional ***seven months*** before filing its PI Motion on May 12, 2023. (*See* Dkt 53). During this seven-month period, Plaintiff continued to delay. Months after this lawsuit was filed, Plaintiff first requested the opportunity to amend its Complaint to assert a patent claim and then delayed filing it, even though it admits that it knew of the claim at least one month before filing the original Complaint. (Dkt. 55-1 at ¶6; Dkt. 1). The patent claim could easily have been included at the outset of this lawsuit (or in the 2020 Action) but for some unknown reason never was. (Doroshow Decl. at n.1).

Sliding Door never advised Doors22 of its intention to file a preliminary injunction motion in the Parties' Rule 26(f) Report or otherwise, and Doors22 first learned of it when the PI Motion was actually filed. (Dkt. 21 at 3). At the same time, after being served with discovery shortly after this action was filed, Sliding Door's substitute counsel asked for several extensions of time to respond to Defendant's initial discovery under the pretense that it was new to the case. However, when Plaintiff finally responded to

12

Defendant's discovery months after it was served, the responses and production were grossly deficient and incomplete. (Doroshow Decl. ¶10). Now, having never provided information, until one business day prior to the date this Opposition was due, and continuing to produce documents on a rolling basis that Doors22 requested months ago in discovery, Plaintiff relies on previously undisclosed information and records in its PI Motion, including Declarations from four individuals who never were disclosed in Plaintiff's Initial Disclosures or Interrogatory responses. Because of Plaintiff's failure to comply with discovery and the Federal Rules, Doors22 now finds itself in the position of being forced to oppose the PI Motion without information or records requested months ago. This is especially problematic because Doors22 first learned of the identity of relevant witnesses for the first time only after Plaintiff's PI Motion was filed. (*Id*. ¶19).

Plaintiff's attempts to sandbag Doors22 in its PI Motion is obviously improper and highly prejudicial given the scope and potential effect of the requested relief. If the Court does not deny Plaintiff's Motion for failure to meet its burden, at a minimum, it should defer ruling on it until after Doors22 has been given the fair opportunity to take the necessary discovery it previously sought to fully oppose it.

**D.    Plaintiff Is Not Likely To Prevail On The Merits.**

**1.   Plaintiff's Trade Dress Claim Based On A Common, Functional Door Design Lacks Merit.**

A product's trade dress consists of "the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (internal quotation marks and citation omitted).

Because Plaintiff's alleged trade dress is not registered with the USPTO, it "must demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." *Adidas Am., Inc. v. Sketchers USA, Inc.*, 890 F.3d

13

747, 754 (9th Cir. 2018) (citation omitted).  Plaintiff does not allege trade dress in a "total" door design, but rather identifies seven product features (not previously disclosed as the trade dress in the FAC) that allegedly comprise its trade dress.

### i.    The PI Motion Is Not Even Based On Plaintiff's Asserted Trade Dress.

As an initial matter, the relief Plaintiff is requesting is not even based on "the TSDC Trade Dress" as defined in either the FAC or the PI Motion, namely:

> [i] a plurality of parallel slidable doors, and [ii] a plurality of parallel top and bottom tracks, [iii] each door slidable along one of the parallel tracks, and [iv] comprising a glass panel, whether transparent or translucent, encased within a rectangular aluminum frame, [v] each front-facing vertical portion of each frame containing a vertical ridge that runs the length on the front surface, [vi] gaskets mounted into the frame, and [vii] wheels that are hidden from view for rolling along one of the parallel tracks

(Dkt. 40 at ¶10; Dkt. 53-1 at 2).  Instead, Plaintiff seeks to preliminarily enjoin the use of seven allegedly "unique" features that are part of its design:

> (1) vertical door frame extrusions with indented grooves; (2) the narrow, sleek 1.5" frame that allows more visible glass and natural flow of light; (3) the smart track options, allowing all panels to stack behind one, optimizing the clear opening and design (4) upper and lower dual, circular, parallel-mounted bumpers affixed to outside of the vertical frame; (5) the divider strips that are put on for style after installation to make the doors look like separate sections of glass (similar to shoji screen); (6) the unique, hidden placement of the sliding door panel wheel in the vertical extrusion; or (7) the aluminum horizontal and vertical beams being 2"x4" and 4"x4" columns.

(Dkt. 53-1 at 2-3, 8-11; Dkt. 53-7 at 3-4).[3]  At the same time, the PI Motion also refers to these seven features as Plaintiff's alleged trade dress, even though they were not identified in the FAC as its trade dress.  Plaintiff is obviously not entitled to injunctive relief relating to alleged trade dress that was never identified in the FAC.

### ii.    Plaintiff's Door Design Is Functional.

Trade dress protection is restricted to nonfunctional product designs so as to not create "back-door patent" of perpetual duration. *See* 1 McCarthy on Trademarks and

---

[3] The TSDC Trade Dress is conjunctive ("and" operator), claiming a combination of elements, while the new trade dress is disjunctive ("or" operator), suggesting Plaintiff is claiming rights in each of the seven features rather than the combination of them.

14

Unfair Competition, § 7:64 (5th ed.). A trade dress is functional "when it is essential to the use or purpose of the device or when it affects the cost or quality of the device." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33 (2001).  Plaintiff alleges that its trade dress design is not functional because four of the seven elements (vertical groove, 1.5" frame, bumpers, and dividers) allegedly have no function. (Dkt. 53-1 at 2-3, 8-11). By doing so, however, Plaintiff's disjunctive recitation of this trade dress means Plaintiff effectively concedes three elements are functional. Plaintiff exclusively relies on the Hai-Ami Declaration, but does not explain how she has the qualifications to opine on functionality. Not surprisingly, Plaintiff's functionality claims are flatly contradicted by its own '729 Patent and common sense. When examined as a whole, Plaintiff's claimed trade dress is functional. Each allegedly non-functional feature is addressed below.

**Vertical Groove:** The '729 Patent discloses "vertical side portions" (20, 22) with an indented "groove" (31) for receiving edges of the panel (12). (Dkt. 53-2 at Fig. 7, 3:51-59 ("As shown in FIG. 7, the transverse shaft 66 is perpendicular to the plane of the panel 12, which is generally received within a straight groove, or channel, 31. … other parts of the frame 14 … also have corresponding grooves, or channels, for receiving respective edges of the panel 12."); *see also* Lustig Decl. ¶7(g) (groove gives rigidity to member)). Thus, the vertical groove is functional, contrary to Hai-Ami's claim.

**1.5" Frame:** A minimized frame is expected when clear sliding glass door systems function to provide visibility between rooms and environmental benefits. However, this dimension specifically affects the quality of the product because a lesser dimension likely would be insufficient to support the weight of the product. (Lustig Decl. ¶¶7(h), 11). Therefore, the 1.5" thick frame is a functional product dimension. *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1064 (9th Cir. 2006) ("[W]here an aesthetic product feature serves a 'significant non trademark function,' the doctrine may preclude protection as a trademark where doing so would stifle legitimate competition.").

**Bumpers and Dividers:** Bumpers and dividers are functional. (Lustig Decl.

DEFENDANT DOORS22'S OPPOSITION TO PLAINTIFF THE SLIDING DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION DEFENDANT DOORS22'S AMENDED OPPOSITION TO PLAINTIFF THE SLIDING DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION

¶¶7(j)-(k), 10). Bumpers cover screw holes, reduce noise, and prevent damage to the door. Dividers are also a functional feature in one of the *unasserted* claims of the '729 Patent. (Dkt. 53-2 at Claim 4 ("The interior sliding door system of claim 1, further including at least one divider strip that is removably attached to the panel's front side."), Figs. 8A-8C). Dividers can affect the cost and quality of the door by providing a less expensive and easier way to customize the door—one of the goals of the '729 Patent's functional dividers. (*Id.* at 1:64-2:2, 4:18-37).

The other aspects of Plaintiff's alleged trade dress—which Plaintiff fails to address the functionality thereof— also are claimed and disclosed in the '729 Patent, including upper and lower tracks with a stacked door design (*id.* at Fig. 6, claim 9, 4:41-5:3), hidden wheels (*id.* at Fig. 1-3, claim 1, 3:29-39 (referring to Fig. 3)), and horizontal and vertical aluminum beams[4] (*id.* at Fig. 3, claim 1, 2:54-56). Plaintiff cannot extend or broaden its patent rights by claiming trade dress over its door's functional features.

The Lustig Declaration confirms that each of the claimed elements are common, functional elements used in the door design of many manufacturers in the industry. (Lustig Decl. ¶¶6-11, 21).

Apposite is *Scentsy*, wherein the court denied a preliminary injunction because the plaintiff failed to "provide[] a non-functional source identifying trade dress or customer confusion" relating to its wax warmers. *Scentsy, Inc. v. Performance Mfg. Inc.*, No. CV08-553-S-EJL, 2009 WL 10713060, at *4-5 (D. Idaho Apr. 3, 2009). The court found the alleged trade dress in *Scentsy* ("the use of a light bulb, cord, a switch, and the split-bowl on top of the warmer presented in a unified way") to be functional. *Id*. at *5. While the unified presentation of the separate bowl on top of the warmer and its "artisan pottery style" could be non-functional, they were "not unique to Scentsy" and thus could "not [be] source identifying of the Scentsy brand or trade dress." *Id*. Similarly here, all of Sliding Doors' trade dress elements are functional, and even if they were not, they are not

---

[4] 2x4 and 4x4 beams are used to build the structure for the door. (Lustig Decl. ¶7(l)).

16

1    unique to Sliding Door because they are used by many others in the industry.

2            **iii.    Plaintiff Provides No Evidence Of Secondary Meaning.**

3            "A product's trade dress attains secondary meaning when the purchasing public

4    associates the dress with a single producer or source rather than just the product itself."

5    *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987).  "The most

6    significant evidence of secondary meaning is survey evidence." *Falcon Stainless, Inc. v.*

7    *Rino Cos., Inc.*, No. CV 08-00926 AHS (MLGx), 2011 WL 13130703, at *3 (C.D. Cal.

8    Oct. 21, 2011).  While advertising may be relevant to secondary meaning, the "ads must

9    feature in some way the trade dress itself."  *First Brands*, 809 F.2d at 1383.

10           Plaintiff fails to present credible evidence of secondary meaning.  No survey

11   evidence is provided, despite having three years to garner such evidence.  Instead,

12   Plaintiff relies on a declaration from *one of its own employees* to try to establish

13   secondary meaning.  However, it is well-settled that in order to prove to secondary

14   meaning, "[t]he Ninth Circuit affords little or no weight to the opinions of those

15   connected with the business that owns the trademark or trade dress" because the inquiry

16   must focus on what is in the minds of consumers. *Aurora World, Inc. v. Ty Inc.*, 719 F.

17   Supp. 2d 1115, 1152 (C.D. Cal. 2009) (collecting cases).

18           Plaintiff's purported "consumer" evidence falls well short.  Plaintiff's third-party

19   Declarations merely show that three individuals *like* Sliding Door's products, that certain

20   features are "desirable," or the products are easy to install, not that there is secondary

21   meaning relating to functional elements Plaintiff claims as its trade dress.[5]  Importantly,

22   Plaintiff's alleged trade dress does *not even cover its entire product*.  Rather, the trade

23   dress Plaintiff asserts in its PI Motion pertains to only seven specific features. Indeed,

24   these third-party declarations point to features *outside of the alleged trade dress* as

25   "distinctive," suggesting that customers may have purchased or recognized Plaintiff's

26   _____

27   [5] The veracity of the Leventhal and Citizen Declarations are, in any event, questionable
     considering that both Declarations have exactly the same texts.  (*Compare* Dkt. 53-4 at

28   ¶6, *with* Dkt. 53-5 at ¶5).

                                                17

DEFENDANT DOORS22'S OPPOSITION TO PLAINTIFF THE SLIDING
DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION DEFENDANT
DOORS22'S AMENDED OPPOSITION TO PLAINTIFF THE SLIDING DOORS
COMPANY'S MOTION FOR PRELIMINARY INJUNCTION

products for reasons other than the alleged trade dress. (*E.g.*, Dkt. 53-4 at ¶6 ("the distinctive visual features that led us to select The Sliding Door Company, including … doors … trim … materials … color offerings")).

Plaintiff's advertising expenditures and press are also meaningless since they do not show a nexus between Plaintiff's purported fame and the seven specific features now alleged to be Plaintiff's trade dress.  Plaintiff merely alleges that the Sliding Door company name is known to consumers (*e.g.*, Dkt. 53-1 at 12 ("Sliding Door has become famous in the industry," is "an industry trendsetter" that has spent over $12 million in advertising), not that consumers associate ***the alleged trade dress*** with a single source or that Sliding Door's fame is in any way tied to ***the alleged trade dress***. In *First Brands*, the 9th Circuit affirmed the denial of a preliminary injunction relating to trade dress infringement because the movant's advertising campaign was not sufficiently tied to the alleged trade dress. *First Brands*, 809 F.2d at 1383. A similar finding is warranted here.

Equally important, Plaintiff concedes that 1.5" is not the only frame size it offers. (Dkt. 53-1 at 2 (arguing that the 1.5" frame is a design "selected frequently by customers")). Thus, consumer recognition with Sliding Doors, or even Sliding Door's products, does not translate to recognition of trade dress that includes a 1.5" frame.

Further, much of Plaintiff's alleged trade dress are features that customers would not see or even know about. The exact measurement of the frame would not be readily discernable to the average consumer, particularly when fractions of an inch are involved. Nor are functional features like indented grooves, bumper strips, and 2x2 or 4x4 beams generally displayed in Plaintiff's advertising. Instead, consumers see only a finished sliding glass door design, similar to many other sliding door products on the market.

Plaintiff's claims of secondary meaning fail not only because of Plaintiff's lack of proof, but also because of common sense.

### iv.   There Is No Evidence Of Confusion.

18

Survey evidence can be "persuasive evidence" of consumer confusion. *Playboy Enters.*, 55 F. Supp. 2d at 1084.  Plaintiff, a self-proclaimed "leader" in the sliding door industry, had no less than ***three years*** to conduct a survey relating to consumer confusion before filing this Motion, but never obtained one. This failure "warrants a presumption that the results would have been unfavorable." *Id.* at 1079, 1084 (denying preliminary injunction motion where plaintiff failed to conduct a survey when it had the financial means and opportunity to show confusion).

In addition to lacking survey evidence, Plaintiff presents no other evidence that any consumer has actually been confused.  Tellingly, Plaintiff's June 2, 2023 Supplemental Interrogatory Responses (served on the eve of Doors22's Opposition deadline) list only Sliding Doors employees and one alleged "homeowner"[6] who have allegedly been confused between the parties' product designs. (Ex. 6 at 18). Not one shred of evidence has been presented that might show ***a customer*** believed it accidentally purchased Doors22's product thinking that it was a Sliding Door product.  In fact, all of the alleged sales and consumer statements referenced in the Hai-Ami Declaration would indicate the opposite—consumers were ***not confused*** and knowingly purchased Doors22's products after comparing them to Plaintiff's products. (*E.g.* Dkt. 53-3 at ¶¶23, 28, 35-37; *see also* Lustig Decl. ¶¶14-15, 22-23). That is lawful competition, not consumer confusion.

The fact that the products look similar is not evidence of consumer confusion. Instead, it is the result of both parties utilizing a similar functional design for a sliding glass door—a design used by many others in the industry. (Lustig Decl. ¶¶6-11, 21).

### v.   Plaintiff's Door Design Is Common In The Industry.

Many third parties have door designs that are nearly identical to Plaintiff's. Indeed, all of Plaintiff's alleged functional trade dress elements can be found in multiple competitive products. As explained in the Lustig Declaration, two of these third parties

---

[6] It appears Mr. Zhao obtained quotes from both Parties and was not actually confused. (*See* Dkt. 53-3 ¶28).

~~DEFENDANT DOORS22'S OPPOSITION TO PLAINTIFF THE SLIDING DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION~~ DEFENDANT DOORS22'S AMENDED OPPOSITION TO PLAINTIFF THE SLIDING DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION

include the American Sliding Door and KNR Sliding Doors. (Lustig Decl. ¶¶8-9). The similarity of the door design at issue in this case makes secondary meaning and consumer confusion virtually impossible to prove. *See, e.g.*, *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802-03 (9th Cir. 1970) (lack of exclusive use weighed against a finding of secondary meaning); *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002) ("[T]hat the marketplace is replete with products using a particular [trademark] indicates not only the difficulty in avoiding its use but also, and directly, the likelihood that consumers will *not* be confused by its use.") (emphasis in original).

### 2. Plaintiff's Patent Claim Lacks Merit.

To establish likelihood of success on the merits of a patent claim, Plaintiff "must show that it will likely prove infringement, and that it will likely withstand challenges . . . to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). Plaintiff cannot establish a likelihood of success on its patent infringement claim here for at least three reasons.

First, under the doctrine of intervening rights, any allegedly infringing conduct is lawful because Doors22 began selling the accused products at a time when Plaintiff's patent coverage lapsed due to a failure to pay maintenance fees. Second, Doors22 uses a different latch configuration than the '729 Patent. Third, numerous pieces of prior art not considered by the Examiner establish that Plaintiff's patent is obvious and thus invalid under 35 U.S.C. § 103.  Each of these points is addressed below.

### i. Doors22's Intervening Rights Bar Plaintiff's Patent Claim.

Patent maintenance fees must be paid to the USPTO at 3.5 years, 7.5 years, and 11.5 years. 37 C.F.R. § 1.362. Plaintiff failed to pay the 7.5-year maintenance fee on time,[7] waiting until October 20, 2020 to Petition for the Delayed Payment of the Fee for Maintaining a Patent in Force. (Ex. 12). This rendered the '729 Patent "expired" and unenforceable from at least January 19, 2018 until October 20, 2020.  Doors22 began

---

[7] The 7.5-year maintenance fee for the '729 Patent should have been paid sometime between January 19, 2017 and January 19, 2018.  (Ex. 11).

20

1   selling its products in 2019 when the '729 Patent had expired. (Lustig Decl. ¶¶4-5).

2       Given these facts, 35 U.S.C. § 41(c)(2) bars Plaintiff from stopping any alleged

3   infringement that began (or for which substantial preparation was made) when the patent

4   was expired. The policy behind this statutory provision is simple: it would be inequitable

5   to preclude conduct that lawfully began at a time when the patentee's rights had lapsed.

6   Therefore, even if Doors22 is infringing (which it is not), Doors22 has intervening rights

7   and was permitted to continue the manufacture and sale of its products under § 41(c)(2)

8   after the '729 Patent was revived. Under these circumstances Plaintiff cannot prevail on

9   its patent infringement claim.

10          **ii.    The '729 Patent Covers A Narrow Latch Configuration.**

11      Plaintiff did not invent or pioneer the concept of sliding glass doors. This is an

12   extremely crowded field, with extensive prior art and many other competitors. As shown

13   in Figure 6 (right), '729 Patent covers only a specific roller

14   assembly for a sliding door that includes a "latch" (74) that

15   is "vertically below" the wheel (72) and parallel to the

16   transverse shaft such that it slidably engages a "concave

17   channel" (104) formed by a convex frame portion (102)

18   under the wheel (72). (Dkt. 53-2).

19      The '729 patent was narrowed because the patentee had to avoid substantial prior

20   art during prosecution before the USPTO, including prior art U.S.

21   Patent No. 3,033,285 ("Banner") (Ex. 13), which has a hooked latch

22   configuration (44) (shown right).

23      To overcome the Examiner's Final Rejection, the patentee explained that the '729

24   Patent's latch was different than Banner because it was "parallel to the ground" and

25   slidably engaged the "concave channel defined by the underside of the lower track's

26   convex longitudinal portion so as to slidably latch each of the lower wheel assemblies to

27   the lower track."  (Ex. 14, RCE Remarks pg. 7-9 ("[T]he art of record does not disclose a

28
                                        21

latch member that is parallel to the transverse shaft of the lower wheel and, as such, is parallel to the ground. … Banner's device is <u>not</u> parallel to the shaft of the wheel and, as such, is <u>not</u> parallel to the ground") (emphasis in original); *see also id.* Notice of Allowance pg. 2 (Examiner's allowance based on this latch disclaimer)). There is no nexus between the narrow latch configuration claimed in the '729 Patent and Plaintiff's alleged irreparable harm that might justify a preliminary injunction. *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016) ("[A] patentee must establish a causal nexus between the infringement and the alleged harm.").

### iii.   Defendant's Prior Art Design Does Not Infringe.

Infringement can be literal or established under the doctrine of equivalents. *Dahl v. Swift Distribs., Inc.*, 757 F. Supp. 2d 976, 981 (C.D. Cal. 2010) (citing *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000) and *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997)). Plaintiff asserts both, but its reasoning differs between its recently served Infringement Contentions (Ex. 15 at 14-15) and its PI Motion (Dkt. 53-2 at Ex. 2 pg. 7-8). *See, e.g.*, Claim Element 1(b). Under either theory, Plaintiff's claim fails.

Put simply, Doors22 does not infringe because it uses a different mechanism to connect its sliding door to the track. First, Doors22's current products utilize a prior art design (*e.g.* Banner) wherein the door is connected to the track with ***an angled hook*** rather than a ***latch parallel to the ground*** as claimed in the '729 Patent:



**<u>Banner</u>**                     **<u>Doors22</u>**                     **<u>'729 Patent</u>**

Notably, the patentee disclaimed Doors22's angled hook design during prosecution of the

22

'729 Patent. (*Supra* Argument (D)(2)(ii)). Besides the latch shape, ~~Doors22's design further differs~~both Doors22 designs (past L-shaped hook and current angled hook) differ from the '729 Patent because Doors22's ~~angled~~ hook is ***next to the wheel*** and engages with a ***90° section on the outside of the track***, rather than having the latch (74) ***longitudinally beneath the wheel***[8] to engage a concave channel (104) created by the convex member (102) that sits under the wheel (72). *(See* Lustig Decl. ¶4).[9]  These differences alone establish that there is no literal infringement of at least claim limitations 1(a)(4) and 1(b). Nor can there be infringement under the doctrine of equivalents due to the patentee's explicit disclaimer about the latch shape during prosecution, the plain meaning of "concave channel,"[10] and the patentee's requirement that the latch engage under the wheel to prevent the wheel from jumping the track. (Ex. 14, RCE Remarks pg. 7-9; *Dahl*, 757 F. Supp. 2d at 981-82 (prosecution history estoppel bars equivalence claims)).

### iv.    The '729 Patent Is Invalid.

Because of the extensive prior art, the alleged point of novelty for the combination claimed in the '729 Patent is narrow. As detailed by the Examiner during prosecution, the prior art taught each and every element of the claims of the '729 Patent ***except*** a latch that is parallel to the shaft of the wheel and parallel to the ground. (Ex. 14, Notice of Allowance pg. 2, RCE Remarks pg. 7-9, Final Office Action). While Doors22 has not yet submitted its Invalidity Contentions, it has located numerous pieces of prior art that disclose this claim limitation, including Canadian Patent Application 2,510,769 (Ex. 16 at Fig. 3) and U.S. Patent No. 3,693,293 (Ex. 17 at Fig. 6), which render the '729 Patent

---

[8] In a prior dispute between Plaintiff and third-party KLS, Judge Bernal construed "vertically below" to mean "positioned longitudinally beneath." (Ex. 18, KLS Claim Construction at 19 ("The Court agrees that a portion of the latch member must hook beneath the track and therefore fall below the wheel.")).

[9] Doors22's L-shaped latch design is no longer sold and thus its past sales, even if infringing (which they are not), cannot cause irreparable harm. (Lustig Decl. ¶4).

[10] The Court has not yet held a Markman hearing on the meaning of "concave channel," but the plain and ordinary meaning of the term requires the channel to be curved inward.

23

obvious under 35 U.S.C. § 103.

**E.    The Balance Of Hardships And Public Interest Weigh In Doors22's Favor.**

The final two *Winter* factors also weigh in Doors22's favor, even though this Court need not consider them if it finds either one of the first two factors cannot be established.

The balance of hardship favors Doors22 because Plaintiff's requested injunction would shut down Doors22's business. Lustig Decl. ¶24; *Scentsy*, 2009 WL 10713060, at *9 (Balance of hardship favors defendants when proposed injunction would "effectively put them out of business."). Plaintiff is facing no new hardship beyond lawful competition from Doors22 that began in 2019. (Lustig Decl. ¶4). Denying the PI Motion will merely maintain the status quo, which is something Plaintiff has known about and been experiencing since at least 2020. If a hardship truly existed, Plaintiff would have acted years ago. Further, any hardship to Plaintiff is self-inflicted through its decisions to adopt a common, functional door design and not pay its patent maintenance fees.

The public interest also favors Doors22.  First, Doors22 took the proper steps to avoid infringement when it designed its product.  It checked the status of Plaintiff's '729 Patent and saw that it was expired for the failure to pay maintenance fees. (Lustig Decl. ¶5; Exs. 11-12). Even if Doors22 had copied the latch design in the '729 Patent (which it did not), the public interest would favor Doors22 because Plaintiff placed its claimed design into the public domain.  It would clearly be against public interest to recapture the disclosure from the public domain and punish those that had used it when it was in the public domain.  However, Doors22 went even further to avoid infringement.  It specifically adopted a design that was different from the '729 Patent, including most recently a prior art design that the patentee had explicitly disclaimed.  (Lustig Decl. ¶¶4-5). Public policy favors holding patentees to their disclaimers and permitting use of prior art that is in the public domain as a non-infringing alternative. Second, the public interest favors Doors22 because there is no evidence of actual consumer confusion. *See, e.g.*, *Int'l*

24

DEFENDANT DOORS22'S OPPOSITION TO PLAINTIFF THE SLIDING DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION DEFENDANT DOORS22'S AMENDED OPPOSITION TO PLAINTIFF THE SLIDING DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION

1  *Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993) (upholding

2  proposition that where there is "no likelihood of confusion among consumers," granting

3  an injunction would "depriv[e] consumers of a choice of products" and be against public

4  interest).

5      **F.**    <u>Plaintiff's Requested Relief Is Overbroad</u>

6      "Injunctive relief must be tailored to remedy the specific harm alleged, and an

7  overbroad preliminary injunction is an abuse of discretion." *League of Wilderness*, 752

8  F.3d at 767. Plaintiff accuses all of Doors22's products of infringement and improperly

9  requests excessively broad relief based on a trade dress that was not identified in its FAC

10  and over extension of its patent right as a means to try to stop Doors22's lawful

11  competition. Granting Plaintiff's requested relief would not give Doors22 proper notice

12  of what conduct is enjoined and what conduct is permissible (*e.g.*, a non-infringing

13  design).  This is improper under the law. *Id.*; Fed. R. Civ. P. 65(d).

14      As an initial matter, Plaintiff overbroadly accuses all of Doors22's products of

15  infringement. Doors22 sells sliding doors, fixed panels, and closet doors. Customers

16  select clear, frosted, tinted, or mirrored panes. (Lustig Decl. ¶¶12-13). Both the '729

17  Patent and Plaintiff's trade dress require wheeled doors. Thus, Doors22's fixed panel

18  walls cannot infringe and should not be an accused product. Further, Plaintiff's trade

19  dress requires clear glass so that the 1.5" frame can "allow[] more visible glass and

20  natural flow of light." (Dkt. 53-1 at 3). Doors22's frosted, tinted and mirrored product

21  offerings do not meet this requirement and should, therefore, not be accused products.

22      For its trade dress, Plaintiff asks the Court to prevent Doors22 from using seven

23  alleged trade dress features, as well as "substantially similar trade dress" (Dkt. 53-7 at

24  3)—a term lacking any meaningful scope particularly given the crowded sliding door

25  field and Plaintiff's inconsistent trade dress definitions. The alleged trade dress comprises

26  seven features in the disjunctive, suggesting that each individual element is a separate

27  trade dress feature. This means Plaintiff is requesting an injunction over features it

28

25

1   concedes to be functional, such as 2x4 and 4x4 beams. Enjoining these functional
2   elements as part of a trade dress claim contradicts the policy against granting indefinite
3   patent rights. *See* 1 McCarthy on Trademarks and Unfair Competition, § 7:64 (5th ed.).
4   In the unlikely event the Court should grant one, any injunction relating to Plaintiff's
5   purported trade dress should specifically identify the trade dress and what functional
6   features Doors22 may utilize.
7           Plaintiff further requests that Doors22 be barred from "manufacturing, importing,
8   using, exporting, offering to sell, and selling the accused products (or products colorably
9   similar thereto)." (Dkt. 53-7 at 4).  Again, Plaintiff asks for vague relief beyond the scope
10  of its alleged rights in this case. The '729 Patent is exceedingly narrow and any
11  injunction should cover only a sliding door with the exact latch configuration claimed.
12  **IV.    CONCLUSION**
13          Defendant respectfully requests that the Court deny Plaintiff's PI Motion based on
14  the existing record. In the event it does not do so, Defendant requests that consideration
15  of the PI Motion be deferred until Defendant has had a fair opportunity to conduct
16  discovery and fully brief the issues before the Court rules on the PI Motion.  Finally, in
17  the unlikely event the PI Motion is granted and Doors22's business is shut down, Plaintiff
18  should be required to post a bond of at least $1 million.
19
20  Dated:  June ~~5~~20, 2023                     FOX ROTHSCHILD LLP
21
22                                      By: */s/ James E. Doroshow*
23                                          James E. Doroshow
                                            Lauren Sabol (pro hac vice)
24                                          Attorneys for Defendant
                                            DOORS22
25
26
27
28                                    26