JAMES E. DOROSHOW (SBN 112920)
JDoroshow@FoxRothschild.com
**FOX ROTHSCHILD LLP**
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:  (310) 598-4150
Facsimile:  (310) 556-9828

LAUREN SABOL (*PRO HAC VICE*)
LSabol@FoxRothschild.com
**FOX ROTHSCHILD LLP**
BNY Mellon Center
500 Grant Street
Pittsburgh, Pennsylvania 15219
Telephone:  (412) 394-5568
Facsimile:  (412) 391-6984

Attorneys for Defendant
THE GLASS DOOR COMPANY, INC.
d/b/a DOORS22

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| THE SLIDING DOOR COMPANY, a California Corporation,<br><br>            Plaintiff,<br>      v.<br><br>THE GLASS DOOR COMPANY, INC. d/b/a DOORS22, a Florida Corporation<br><br>            Defendant. | Case No. 2:22-cv-07500-MCS-MAA<br><br>**AMENDED DECLARATION OF DAVID LUSTIG IN SUPPORT OF DOORS22'S OPPOSITION TO PLAINTIFF THE SLIDING DOORS COMPANY'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge:        The Hon. Mark C. Scarsi<br>Courtroom:  7C<br>Date:          June 26, 2023<br>Time:          9:00 a.m. |

1

~~LUSTIG DECLARATION IN SUPPORT OF DOORS22'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION~~
AMENDED LUSTIG DECLARATION IN SUPPORT OF DOORS22'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

I, David Lustig, declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts set forth in this Declaration.

2. I am submitting this Amended Declaration in opposition to the Motion of Plaintiff the Sliding Door Company ("Sliding Door") for a Motion for Preliminary Injunction.

3. I am the co-owner of Defendant The Glass Door Company, Inc. d/b/a Doors22 ("Doors22"). Leon Bell is the other co-owner of Doors22.

4. Doors22 has been offering its sliding glass door products for sale since approximately October 2019. ~~The design of the Doors22's products has never changed since they were first introduced for sale.~~ The general overall design of the Doors22's products has been the same since they were first introduced for sale. But in reviewing documents for this case since the submission of my June 2, 2023 Declaration, my memory was refreshed as to one design change made to the product's hook. Around mid-2018, I started designing versions of the product with both an L-shaped hook and an angled hook. Due to manufacturing challenges with the angled hook with the initial manufacturers, the first products produced and sold had an L-shaped hook. In 2022, prior to the filing of this lawsuit, I resolved the manufacturing challenges with a new manufacturer and transitioned to the angled hook. Doors22 is no longer using an L-shaped hook. All of Doors22's products currently have an angled hook. Pictures of the two different hooks from Doors22's installation manuals are shown below.

2

~~LUSTIG DECLARATION IN SUPPORT OF DOORS22'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION~~
AMENDED LUSTIG DECLARATION IN SUPPORT OF DOORS22'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

L-shaped hook (no longer used)   Angled hook (currently used)



4.

5. While I have never been told by Sliding Door that it considered my company to be infringing U.S. Patent No. 7,647,729 ("the '729 Patent") prior to this lawsuit, I learned about the '729 Patent from the time I worked with a Sliding Door affiliate, System Define Outcomes. When designing the Doors22 product, I looked up the Sliding Door patent and found that it had expired because Sliding Door had not paid its maintenance fees. I did not copy the latch design in the '729 Patent. Instead, I designed a different track and hook, and in the current Doors22 products, I have used a prior art latch configuration in Doors22's product to avoid any issue with Sliding Door regarding the '729 Patent.

6. Many other companies currently offer, and have previously offered for many years, the same or similar sliding glass door products that Sliding Door sells. I consider this to be a crowded and competitive field where the overall look and feel of one brand is not truly distinctive over another. In fact, as evidenced in the quote from the potential buyer referenced in Sliding Door's Motion ("I get the exact same product but cheaper"), the market is largely distinguished by the quality of the functional features of the products as they relate to overall price.

7. I have reviewed the elements that Sliding Door claims as its trade dress in the Declaration of Sheryl Hai-Ami in Support of Sliding Door's Motion for Preliminary Injunction ("Hai-Ami Decl.") at ¶¶ 6-13. (Dkt. 53-3). I believe these elements are

common functional features that could be used in any sliding glass door product:

a. slidable doors, which are used as an egress. Their parallel alignment saves space;

b. parallel top and bottom tracks for the doors to slide along;

c. glass panels of all types (such as transparent, translucent, or mirrored depending on the client's desired function for the glass, *e.g.*, increase natural light, privacy, make the space look bigger) that are encased within a rectangular frame to support and protect the glass panels;

d. a vertical ridge that runs along the front surface to guide the door, which receives a dust strip for dust prevention. Doors22's products do not have this ridge;

e. gaskets mounted on the frame to seal any gaps. Doors22's products do not have gaskets;

f. wheels to roll the doors that are hidden from view – the look and exact placement do not matter because wheels are functional and buyers do not want to see them. Sliding panel doors typically always have hidden wheels, whereas barn door sliding doors have visible wheels. In fact, the product listings and promotional materials for sliding glass doors purposely avoid showing angles of any pictures of the wheels on the doors because they simply do not factor into the overall look of the door;

g. indented grooves in vertical frame extrusions that can give support and rigidity to the extrusion – again, listings and promotional materials rarely depict this vertical groove, because it is common in many sliding doors;

h. a narrow frame that is wide enough to hold the weight of the glass. Clear glass is one glass option. Clear glass allows for the maximum

      amount of natural light and can provide environmental benefits and LEED certification points;

  i. tracking options to allow panels to stack, also to fulfill the functional purpose of maximizing light flow when the door is opened and minimize the amount of space that the doors occupy;

  j. bumpers of any style (typically circular) mounted on the outside of the door frame. These merely fulfill obvious functional purposes: to prevent friction and banging of or damage to the doors when closed, and I have never come across a buyer who cares about the number and location chosen. The location of the bumpers is functional because they are placed where the horizontal frame is attached to the vertical frame. In this placement, the bumpers cover the screw holes;

  k. dividers, which as mentioned below, are essentially mullions;

  l. use of commonly sized aluminum beams, such as 2"x4" and 4"x4". These aluminum beams give structure to the doors if there is no wall. Typically, the 2"x4" beams are horizontal and the 4"x4" beams are vertical for adequate support, but the placement depends on the dimensions of the space. Custom sizes are common in the industry depending on the size of the space that the door will be fitting. Aluminum is used because it is durable, low maintenance (rust resistant) and energy efficient.

Examples of sliding glass door product listings which include all of these functional features are attached hereto as Exhibits A-B.

    8. Exhibit A depicts just one example of the promotional website of another sliding door company, American Sliding Door ("ASD") that advertises the sale of sliding glass door products encompassing the functional features listed in Paragraph 6 a-l above. In just the attached screenshot alone, there are eighteen examples of sliding door styles

1 that are being marketed by ASD. It is important to note that there ultimately is no way to
2 merely look at any of the doors and recognize that they may be a particular brand/sold by
3 a specific manufacturer or that they come from a single source. The ASD website depicts
4 common choices for the customer to consider: insert material (i.e. type of glass), type of
5 frame, color, profile, frame dividers, rails system ("hanging" or on a track), and
6 accessories – a customer may choose as little or as many, according to preference. I have
7 highlighted certain parts of this screenshot that emphasize the importance of
8 "customizing" sliding doors to meet whatever the functional need of the particular
9 customer may be, such as space, and the importance of how those needs fit into the
10 customer's budget. *See, e.g.*, Exhibit A ("All our doors are custom manufactured. Our
11 doors can be fully customized with your choice of profiles and inserts…." "No matter
12 your budget or tastes, we can provide quality service that is tailored for you.").

13      9. Exhibit B similarly depicts the promotional website of another competitor,
14 KNR Sliding Doors, again showing a multitude of (at least sixteen) sliding glass doors
15 that contain the functional features listed in Paragraph 6 a-l above. I have highlighted
16 portions of Exhibit B to emphasize the customizable functional features (such as frame,
17 door material, and sliding wheels), as well as the importance of price and quality. *See,
18 e.g.*, Exhibit B ("… [e]nsuring you the best possible price without compromising on
19 quality", without any mention of look or feel).

20      10. These are simply two examples of sliding door products in the market that
21 are similar to Sliding Door's known design. There are numerous other examples of
22 similar looking sliding doors available in the market. There is nothing unique or distinct
23 about the Sliding Door products or any of the elements that are described in the Hai-Ami
24 Declaration at ¶¶ 6-13. (Dkt. 53-3). For example, as mentioned above, the "divider strip
25 design" (Dkt. 53-3, Hai-Ami Decl. at ¶ 6) is merely a mullion that may be applied with
26 adhesive on either surface, a well-established method used to alter the look of a single
27 glass paned window or door (*see, e.g.*, Exhibit C https://www.newpanes.com/, offering

28

6

~~LUSTIG DECLARATION IN SUPPORT OF DOORS22'S~~
~~OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION~~
AMENDED LUSTIG DECLARATION IN SUPPORT OF DOORS22'S
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

it's glue-on mullion products since 1975, and Exhibit D https://thehoneycombhome.com/window-grids-for-sliding-glass-doors/, describing the application process on a sliding glass door). Such mullions, or "divider strips" also provide a particular safety function of preventing someone from walking through the transparent glass.

11. Doors22 sells online. Doors22's products have a narrow frame, but the exact dimension of the frame is not apparent when looking at the pictures of Doors22's products. Having a narrow frame allows for more glass and visibility between rooms when clear glass is used, which is a common feature of virtually all glass sliding doors in the market. More glass also allows for more natural light, which has environmental benefits and can offer points for LEED certification. A frame narrower than 1.5" likely would be insufficient to support the weight of the glass, and is therefore functional.

12. Doors22 also offers sliding doors with mirrors, frosted glass, and tinted glass. Mirrors can make a space look larger or can be used to hide certain spaces from view, such as the interior of a closet. Frosted and tinted glass give privacy by inhibiting visibility and the natural flow of light.

13. Doors22 also offers fixed panels, which do not have sliding doors or wheels. These fixed panels can be purchased on their own or as part of a sliding door system. In the sliding door systems, the slider (door with the wheels) is typically only a part of the overall system with the remaining walls comprising fixed panels.

14. In my role, I interface directly with customers regularly. It is my understanding and belief that customers purchase Doors22's products over similarly designed products for a variety of reasons, including the quality of our materials, competitive pricing, customer service, fast delivery, and unique product features such as our smart lock with mobile app offering.

15. I am not aware of any instance in which a customer was ever confused between Doors22 and Sliding Door or their respective products.

Case 2:22-cv-07500-MCS-MAA Document 69 Filed 06/23/23 Page 8 of 11 Page ID #:1605

16. In June 2020, my company received a letter from Sliding Door claiming that "TSDC has recently learned that Doors 22 has recently began offering for sale similar types of products to TSDC including, without limitation various room partitions and dividers, doors, frames, etc." and that Doors22 was allegedly infringing Sliding Door's copyrights and engaging in unfair competition by doing so. This letter is attached as Exhibit E.

17. On July 16, 2020, Sliding Door filed a complaint against Doors22, Leon Bell and me in the Southern District of Florida alleging unfair competition, false designation of origin, false advertising, false description of fact, trademark infringement, and deceptive and unfair trade practices relating to Doors22's use of certain photographs in promotional materials for Doors22's products ("the 2020 Complaint"). A copy of the 2020 Complaint is attached to this declaration as Exhibit F.

18. Sliding Door alleged in Paragraph 14 of the 2020 Complaint that "within just the past year [Doors22 has] become engaged in the business of distributing, marketing and selling interior doors and related products in competition with SLIDING DOOR."

19. Among other allegations, Sliding Door alleged in Paragraph 40 of the 2020 Complaint that "[o]n or about May 22, 2020 management for SLIDING DOOR was advised by an Atlanta salesperson that she had lost a project to a company named 'DOORS22.' The customer who purchased from DOORS22 stated 'I get the exact same product but cheaper.'" The quote from that particular customer again demonstrates that an ordinary buyer of a sliding glass door product is largely concerned with functional features as they relate to price. It is also clearly shown that consumers are able to distinguish between the source of competitor's products because, according to this particular customer, they were able to purchase similar products and knew which company was selling which product.

20. Therefore, I believe that Ms. Hai-Ami's statement that "Sliding Door first

1 learned of Door22's sale of [the allegedly] infringing products on September 22, 2022" in
2 her Declaration is incorrect. (Dkt. 53-3, Hai-Ami Decl. at ¶ 6).
3     21.    As mentioned above, Doors22 sells online. Currently, a search for "sliding
4 glass doors" on Walmart.com alone results in over twenty different "brands" (and
5 Doors22 is not included in the top 20 hits). I also believe Doors22's alleged "aggressive
6 and pervasive" marketing to be a common and required quality among retailers who sell
7 to consumers in a competitive field, and that the use of the prefix "Q" to represent a
8 "quote" in a sales proposal is not a novel idea – Doors22 uses this Q merely as an easily
9 identifiable initial. (*See* Dkt. 53-3, Hai-Ami Decl. at ¶ 28-29).
10     22.    I recently became aware from others in the industry that Doron Polus, the
11 owner of Sliding Doors, emailed his employees with instructions about what to say when
12 a customer mentions Doors22, stating:

> Hi all,
>
> It is very important for me to bring you up to date on the situation with Doors22.
>
> Doors22 literally copied our products and patent. They are working from a warehouse in Ft. Lauderdale, Florida and they bring the product in from China (we have all of the information about their supplier).
>
> As we speak, we are in the midst of litigation regarding this infringement of our product line and patent.
>
> Their marketing approach is only to sell online. They have no showrooms for the public to walk into. When people ask for quotes, they email a quote like the below.
>
> They do not offer installation. They ship directly from Florida.
>
> When you get a lead or inquiry, and the name Doors22 comes up in conversation, please do the following:
>
> 1.    Ask for a copy of the quote from Doors22.

2. Outline the differences between The Sliding Door Company and Doors22.

    a. Over 18 years experience, fabricating in our own factory with the highest quality available vs: a very small, inexperienced company, no showrooms, no customer services, no field measurements, and no installers.

    b. Our full turnkey solutions including attention to detail, submittals, formal drawings when needed, follow up every step of the project through to completion vs: one call, order takers and ship lose doors to the curb.

    c. Our 10-year limited warranty is substantially different and backed by our 18 years of working experience VS inexperienced company.

    d. Doors22 quote is not necessarily lower than ours, so we have no reason to lose any orders whatsoever to them.

3. In the case where we see a quote showing a lower price:

    a. If the quote is for the exact same product, up to 25% discount, match the price and close the deal.

    b. If the quote is for the exact same product is more than 25% discount, please email Gil right away.

    c. If the quote is not for the exact same product, mention the differences.

4. If the customer is located near one of our showrooms, make all the effort to have them come in to see our product in person (feel and use). This is our HUGE advantage in addition to offering the full turnkey solution including field measure and installation which Doors22 cannot.

5. If the customer is not in the near vicinity of our showroom, use all the reasons above to close the deal.

I do not want to lose even one order to them. Please take it to heart.

10
~~LUSTIG DECLARATION IN SUPPORT OF DOORS22'S~~
~~OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION~~
AMENDED LUSTIG DECLARATION IN SUPPORT OF DOORS22'S
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

23. While I disagree with many of the statements made by Mr. Polus, he does highlight the differences between the parties' sales strategies (online vs. in store), pricing, and services offered (installation included vs. not included). I do not believe that consumers are confused between Doors22 and Sliding Door's products. Instead, I think consumers evaluate the various sliding door product offerings on the market (Doors22, Sliding Door, and many others) and decide which company to order from.

24. I understand that all of Doors22's products are accused of infringement in this case. If the Court were to grant Sliding Door's motion, I would be forced to shut my business down until trial of this matter. Based on my expected annual revenue, that would likely result in several million dollars of lost revenue over the next year until trial.

I declare under penalty of perjury of the laws of the State of Florida and the United States that the foregoing is true and correct.

Executed this ~~2nd~~20th day of June 2023 in Miami, Florida.

_____
David Lustig

~~LUSTIG DECLARATION IN SUPPORT OF DOORS22'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION~~
AMENDED LUSTIG DECLARATION IN SUPPORT OF DOORS22'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION